MISSISSIPPI VALLEY BARGE LINE COMPANY, American Commercial Lines, Inc., and Union Barge Line Corporation, Plaintiffs,

v.

UNITED STATES of America and Interstate Commerce Commission, Defendants.

Pittsburgh Towing Company, Intervenor.

No. 64C 3 (1).

United States District Court
E. D. Missouri, E. D.

Feb. 18, 1966.

G. F. Gunn, Jr., of LaTourette & Rebman, St. Louis, Mo., James M. Henderson and Jacob P. Billig, LaRoe, Winn & Moerman, Washington, D. C., W. Walter Braham, Jr., Pittsburgh, Pa., for plaintiffs and intervenor.

Richard D. FitzGibbon, Jr., U. S. Atty., St. Louis, Mo., Robert Ginanne, Gen. Counsel, I. C. C., Washington, D. C., for Pittsburgh Towing Co.

Ernest L. Keathly, St. Louis, Mo., Ernie Adamson, Middleburg, Va., for defendants.

Before MATTHES, Circuit Judge, and HARPER and MEREDITH, District Judges.

HARPER, District Judge.

This action was brought under 28 U.S. C.A. §§ 1336 and 2284 on January 7, 1964, by the plaintiffs to enjoin, set aside, annul and suspend orders of the Interstate Commerce Commission (here-

inafter referred to as the Commission), dated April 9, 1963, and December 19, 1963, and served April 24, 1963, and January 3, 1964, respectively, in Finance Docket 21193, Pittsburgh Towing Company, Certificate Transfer—Charles Zubik, which authorized transfer and issuance of Certificate W-364 to the Pittsburgh Towing Company.

Pursuant to 28 U.S.C.A. §§ 2321–2325, a three-judge court was constituted. On February 18, 1964, on its own motion, the Commission re-opened the hearing before it and this court stayed proceedings pending disposition of the matter by the Commission. In its decision dated March 19, 1965, the Commission, with four commissioners dissenting, approved the transfer, but stayed the effect of its order until the termination of the proceedings before this court and the meeting of certain conditions by Pittsburgh.

Thereafter, on June 10, 1965, the plaintiffs filed an amended petition seeking to enjoin, set aside, annul and suspend orders of the Interstate Commerce Commission dated September 9, 1960, April 9, 1963, December 19, 1963, and March 19, 1965, in said matter. On October 28, 1965, the court held its hearing in this matter.

■ Under 5 U.S.C.A. § 1009(e) the scope of our review of the Commission's orders is limited to a determination upon the whole record of whether the Commission's findings are supported by substantial evidence or whether its findings and conclusions are induced by misapplication of the law. If the Commission's findings are supported by substantial evidence and are in accordance with the law, they must be upheld. Yourga v. United States, D.C., 191 F.Supp. 373, 375, 376; Universal Camera Corporation v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456; State Corp. Commission of Kansas v. United States, D.C., 184 F. Supp. 691, 696.

Plaintiffs attack the orders of the Interstate Commerce Commission on the grounds that the orders are contrary to law and the Commission's transfer regulations, are based upon misrepresentations, are not supported by the facts essential to determine whether the transaction was lawful, and the failure to disclose essential facts in the application for transfer filed with the Commission on July 8, 1960.

This proceeding arose from an application filed on July 8, 1960, by Charles Zubik to approve the transfer of Certificate W-364 from himself to Pittsburgh. On September 9, 1960, the transfer was approved by order of the Commission based solely upon the application. Thereafter, plaintiffs filed a petition on October 24, 1960, for leave to intervene and for re-opening and vacation of the order of September 9, 1960, which petition was denied by the Commission on December 30, 1960, but on September 13, 1961, upon consideration of an additional petition by the plaintiffs, the Commission re-opened the proceedings for further consideration and hearing, and stayed issuance of the certificate to transfer pending final disposition of the matter.

The plaintiffs were permitted to intervene, but the order of September 9, 1960, was not vacated. A hearing, in which the Bureau of Inquiry and Compliance participated, was held. The hearing examiner recommended that the order approving the transfer be set aside and the application be denied, but the Commission on April 9, 1963, affirmed the order approving the transfer.

The plaintiffs filed a petition for reconsideration, which was denied by the Commission on December 19, 1963, and on January 7, 1964, the suit in question was filed.

A brief statement of the facts concerning other matters disclosed by the record is pertinent at this point. Water Carrier Certificate W-364 was issued to Charles Zubik on January 18, 1943. Services under the certificate were suspended on or about July 31, 1950. During that year the certificate holder was relieved of the duty of filing annual reports until such time as operations were resumed. On November 3, 1959, the

Pittsburgh Towing Company was incorporated in the Commonwealth of Pennsylvania for the purpose of conducting towing operations on inland waterways.

Edmond D. Osbourne was responsible for the incorporation of Pittsburgh and at the time of incorporation was one of the incorporators. Two hundred one shares of stock were issued at the time of incorporation, one hundred shares to Osbourne, one hundred shares to Douglas B. Meyers, and one share to a Francis X. Wiget. On June 9, 1960, an option agreement was entered into between Charles Zubik and Edmond D. Osbourne, wherein for a consideration of $50.00 Zubik gave to Osbourne the exclusive right of option to purchase at any time prior to December 31, 1960, for a purchase price of $100,000.00, the water carrier certificate involved in this matter, provided the transfer was approved by the Commission. The option agreement further provided that if Osbourne gave notice in writing to Zubik prior to December 31, 1960, of his election to exercise the option, Zubik would apply to the Interstate Commerce Commission for approval of the proposed transfer and assignment of the said water carrier certificate to Osbourne or his designee, utilizing such counsel as Osbourne might approve in seeking such transfer.

On June 29, 1960, Zubik, at Osbourne's request, amended the option agreement and assigned the Water Carrier Certificate W-364 to Pittsburgh, subject to approval by the Commission, with the understanding that upon the Commission's approval of the transfer Pittsburgh would issue to Zubik twenty-five hundred shares of its capital stock. This change in the agreement was made in an effort to facilitate the transfer of the certificate. Osbourne had until December 31, 1960, to exercise his option to purchase the twenty-five hundred shares from Zubik in exchange for the one hundred thousand dollars agreed upon in the option agreement of June 9th. As will be pointed out later, the reason for the injection of the corporate device in the manner in which it was done was a mere subterfuge to circumvent Commission regulations pertaining to transfer.

On July 8, 1960, when the application for the transfer was filed by Zubik, Paragraph 2(n) of the application stated that the transferee would be officered by Zubik, Osbourne and other persons. The record shows that Zubik at no time, neither before nor after transfer, was an officer of the corporation. Paragraph 2(o) of the application states: "Transferee is a new corporation which has been organized for the purpose of acquiring and operating the Certificate W-364 * * *."

The record discloses that the corporation was organized in November of 1959, the agreement with respect to Osbourne acquiring the certificate was entered into on June 9, 1960, and that the corporation did not enter the picture until June 29, 1960. The record further discloses that on June 8, 1960, the two hundred one shares of stock which at that time had been issued in the corporation were all owned by Osbourne, and that Zubik did not own any of said stock until September 19, 1960. The record further discloses that Zubik owned some eight towboats and four barges at the time of the application and that Pittsburgh owned no towboats, no barges, and had little, if any, capital.

On July 7, 1960, Zubik sent notices to all his supposed competitiors, which notice read as follows: "This is to notify you that for personal reasons I have applied to the Interstate Commerce Commission for permission to change my certificate from a sole proprietorship to a corporation, of which *I am* the owner, Pittsburgh Towing Company."

This statement to the effect that he (Zubik) was the owner of this corporation is completely refuted by the record, which shows that on that date Osbourne was the sole owner of the corporation. When the Commission on September 9, 1960, approved the transfer of the certificate it had not seen and was not aware of the option agreement of June 9, 1960, the amendment to the option agreement of June 29, 1960, the contents

of the articles of incorporation showing the incorporators of Pittsburgh, nor the true facts with respect to the ownership of the Pittsburgh stock at said time. The Commission did not see the agreements between Zubik and Osbourne for the sale of this certificate until during the hearing held in this matter on March 27 and 28, 1962, when the Bureau of Inquiry and Compliance participated. Those documents were produced at that hearing by the parties, reluctantly, and over strenuous objection.

Transfer of water carrier certificates is provided for in 49 U.S.C.A. § 912, which reads in part: " * * * any such certificate or permit may be transferred in accordance with such regulations as the Commission shall proscribe for the protection of the public interest and to insure compliance with the provisions of this chapter."

Pursuant to said section the Commission has promulgated regulations 49 CFR 306.1 through 306.10 pertaining to the transfer of water carrier certificates. 49 CFR 306.9, one of the said regulations, provides:

> "The transfer of any certificate or permit under which operations are not being conducted at the time of the proposed transfer will be approved only upon a showing that the suspension of operations was caused by circumstances over which the holder of the certificate or permit had no control, and that the water carrier operations authorized under the certificate or permit sought to be transferred will be consistent with the public interest."

The only offer that Zubik has ever made concerning circumstances causing the suspension of operations was the bare assertion in the application that the suspension was caused by "circumstances over which your petitioner had no control * * *." There was a complete void of any showing that the resumption of operations under the certificate would be in the public interest. Nevertheless, on September 9, 1960, the Commission granted its initial approval of the transfer "for good cause appearing therefor."

As was mentioned above, hearings on the application were twice re-opened, and the option agreements were disclosed. It was during these hearings that the questions concerning the cause of the suspension of the operations and Pittsburgh's fitness to maintain operations were raised. The Commission took official notice of the fact that business conditions were unfavorable for water carriers during the 1950's. This notice completely ignores a fact well taken by the dissenting members of the Commission that Zubik's competitiors underwent the same unfavorable conditions during the 1950's, and are today operating profitably with no interruption of service during the difficult years.

The Commission's regulations provide that a required exhibit to be submitted with the application for transfer is "a copy of all contracts or other written instruments entered into, or proposed to be entered into, pertaining to the proposed transfer * · * *." 49 CFR 306.4(b).

Nothing could fit this description more clearly than the option agreements entered into between Zubik and Osbourne. It is the option agreements which contain the evidence showing the actual purpose for the transfer of the certificate to Pittsburgh. No reasonable reader of the record before the Commission and this court could come to any conclusion regarding the purpose of the application of transfer of Water Carrier Certificate W-364 other than that of transferring ownership of the certificate from Zubik to Osbourne and effectively circumventing the regulations of the Commission. The use of the corporate device and the transfer of the certificate to Pittsburgh was an attempt on the part of Zubik and Osbourne to transfer ownership of the certificate without subjecting themselves to the procedure specifically created for examining applications for transfer of ownership. Yet the Commission glossed over the fact that the option agreements were missing and not timely brought to its attention by stating that these agreements were not vital to the transfer.

Subsequent hearings resulted in a decision by a hearing examiner against the transfer and the Commission refusing to accept the findings and decision of the examiner.

 This court cannot accept the Commission's refusal to heed its own regulations and the clear evidence of the attempt to deceive the Commission. Legislative regulations, created by a Federal agency pursuant to congressional authority, have the force of law. Columbia Broadcasting System v. U. S., 316 U.S. 407, 417–419, 62 S.Ct. 1194, 86 L.Ed. 1563 (1942). The agency which promulgates the rule is as bound by its terms as is the general public. Columbia Broadcasting System v. United States, 316 U.S. 422, 62 S.Ct. 1194; McKay v. Wahlenmaier, 96 U.S.App.D.C. 313, 226 F.2d 35, 43. The Commission has itself held that it is bound by its rules. United States Lines Co., Certificate Transfer, 260 ICC 355, 358. Therefore, any action taken by the Commission is invalid unless the rules pertaining to the action are followed.

Besides the above-mentioned regulations concerning documents pertaining to the proposed transfer (49 CFR 306.4(b)), and a showing that the suspension of operations was caused by circumstances over which the certificate holder had no control (49 CFR 306.9), the applicant is required to submit "any additional information to show that the proposed transferee is fit, willing, and able *properly* to perform services authorized by the certificate or permit sought to be transferred." 49 CFR 306.3(o). (Emphasis added.)

There was a total absence of information in the application for transfer showing that Pittsburgh was in any way financially fit to carry on the operations authorized by the certificate. Nothing more than the intention of the supposed owner of all of the stock of Pittsburgh to make some arrangement appears in the application. Zubik stated that he was to be the holder of all of the issued and outstanding stock, when in truth he was not and never intended to be. Pittsburgh was Osbourne's corporation. The only connection with Pittsburgh that Zubik contemplated was a brief sojourn as stockholder while Osbourne purchased Zubik's stock, which he received in exchange for the certificate.

 The Commission's reference to Pittsburgh's improving financial status is totally immaterial. So also is Zubik's temporary ownership of Pittsburgh stock after approval of the application. The Commission was required to view the parties at the time of the transfer application. Zubik concealed the options from the Commission as long as he could. The options changed the entire nature of the proceedings from a change in the *form* of ownership to a change in ownership. Totally different procedures and attitudes govern when change in the ownership of the certificate is attempted. Zubik and Osbourne attempted to circumvent the regulations controlling the transfer of ownership of a certificate. Information was concealed from the Commission. The plan clearly was to transfer the certificate from Zubik, a sole proprietorship, to a corporation owned by Osbourne when the application was filed, and to be owned by Osbourne when the transfer was consummated.

 The contention of Zubik, Osbourne and the Commission that this matter involves merely a change in the *form* of ownership completely ignores the option agreement with its obvious intentions. Deceit was perpetrated by Zubik in his letter to his competitors in July of 1960. The Commission allowed a concealment and violation of its rules in the application for transfer of the certificate on July 8, 1960. The Commission cannot ignore its own rules under the facts before it.

In view of the regulations and the record, the orders of the Commission approving the transfer of Water Carrier Certificate W-364 are hereby set aside and annulled.

A decree in accordance with this opinion may be submitted by the plaintiffs on notice unless consultation among the parties shall bring about a waiver of notice.