273 F.Supp. 1 (1967)
MISSISSIPPI VALLEY BARGE LINE COMPANY, American Commercial Lines, Inc., and Union Barge Line Corporation, Plaintiffs,
v.
UNITED STATES of America and Interstate Commerce Commission, Defendants, and
Pittsburgh Towing Company, Charles Zubik, Jr., as Executor, and Virginia Zubik Drambel, as Executrix, of the Estate of Charles Zubik, Deceased, Intervenors.
No. 64 C 3(1).
United States District Court E. D. Missouri, E. D.
July 31, 1967.
*2 G. F. Gunn, Jr., St. Louis, Mo., James M. Henderson and Jacob P. Billig, Washington, D. C., for plaintiffs.
Veryl L. Riddle, U. S. Atty., St. Louis, Mo., Harold D. McCoy, Secretary, I.C.C., and Robert Ginanne, Gen. Counsel, I.C.C., Washington, D. C., for defendants.
Ernest L. Keathley, St. Louis, Mo., and Ernie Adamson, Middleburg, Va., for intervenors.
Before MATTHES, Circuit Judge, and HARPER and MEREDITH, District Judges.
HARPER, District Judge.

MEMORANDUM OPINION
On April 6, 1967, the plaintiffs filed a motion to require defendant, Interstate Commerce Commission, to show cause why it should not set aside its order of February 9, 1967, refusing to strike tariff of Charles Zubik, Jr., Executor, and Virginia Zubik Drambel, Executrix, and to show cause why such tariff should not be stricken from the Commission's files, and the said motion was noticed for hearing on May 5, 1967.
On May 3, 1967, Charles Zubik, Jr., Executor, and Virginia Zubik Drambel, Executrix, of the Estate of Charles Zubik, Deceased, filed a motion for leave to intervene.
On May 5, 1967, the plaintiff's motion was presented to the court and an order was issued to the Interstate Commerce Commission to show cause on July 6, 1967, why its order of February 9, 1967, refusing to strike the tariff of Charles Zubik, Jr., Executor, and Virginia Zubik Drambel, Executrix, of the Estate of Charles Zubik, Deceased, should not be set aside and said tariff stricken from its files and records, and the court further granted Charles Zubik, Jr., Executor, and Virginia Zubik Drambel, Executrix, of the Estate of Charles Zubik, Deceased, leave to intervene.
The parties were ordered to file exhibits or a statement of fact and briefs and responsive briefs.
Thereafter, on June 16, 1967, the United States of America and the Interstate Commerce Commission filed with the clerk of the court a motion to enforce judgment and commission order, and at the same time filed with the clerk a motion for a temporary injunction, and lodged with the clerk of the court an order to show cause.
The defendants in the two motions and order to show cause were Edmund D. Osbourne, Pittsburgh Towing Company, Charles Zubik, Jr., as Executor, and Virginia Zubik Drambel, as Executrix, of the Estate of Charles Zubik, Deceased.
On July 6, 1967, the various motions were presented and argued to the court, and the testimony of one witness, John T. Walsh, was heard. The attorney for Edmund D. Osbourne, raised the question of jurisdiction with respect to his client, who had not been served and was not a party to the original litigation, and had not entered his appearance.
Thereafter, on July 10, 1967, the office of the United States Attorney, on behalf of the United States of America and the Interstate Commerce Commission, refiled the motion to enforce judgment and commission order and the motion for temporary injunction previously referred to, and requested the court to, and the court did issue the order to show cause, returnable July 27, 1967, and all of the *3 parties defendant, namely, Edmund D. Osbourne, Pittsburgh Towing Company, Charles Zubik, Jr., as Executor, and Virginia Zubik Drambel, as Executrix, of the Estate of Charles Zubik, Deceased, were served with the order to show cause. The order to show cause seeks a temporary injunction pursuant to the motion to enforce judgment and commission order, which motion in addition seeks a permanent injunction.
On July 27, 1967, when the matter came on for hearing, before the court, before the commencement of the hearing, the court ordered the trial of the action on the merits advanced and consolidated with the hearing of the application for the temporary injunction, pursuant to Rule 65 (a) (2) of the Rules of Civil Procedure, and the hearing on the temporary and permanent injunction was consolidated.
The parties stipulated that the testimony introduced at the hearing before the court on July 6, 1967, was to be treated as a part of the record and as testimony in the hearing with respect to orders to show cause and the seeking of the injunction.
The testimony and the facts deduced from the record and the file disclose that the plaintiffs, Mississippi Valley Barge Line Company, American Commercial Lines, Inc., and Union Barge Line Corporation, commenced this three-judge action on January 7, 1964, to enjoin, set aside, annul, and suspend orders of the Interstate Commerce Commission (hereinafter referred to as the Commission) authorizing one Charles Zubik, Sr., to transfer and issue Water Carrier Certificate W-364 (hereinafter referred to as W-364) to Pittsburgh Towing Company (hereinafter referred to as Pittsburgh). Pittsburgh was permitted to intervene in the action.
On February 18, 1966, this court filed a memorandum opinion setting aside and annulling the Commission's approval of the said transfer. (See 252 F.Supp. 162 for a complete statement of the facts upon which this court based its opinion.) Some of these facts which are relevant in these motions will be set out in this opinion.
W-364 was issued to Charles Zubik, Sr., on January 18, 1943. W-364 granted to Zubik, Sr., the right to conduct towing operations on certain inland waterways. Zubik, Sr., suspended services under W-364 on or about July 31, 1950, and from thenceforth the certificate became dormant (at least in Zubik, Sr.'s hands). Zubik, Sr., was approached by Edmund D. Osbourne to buy W-364, and on June 9, 1960, Zubik, Sr., entered into an option agreement with Osbourne wherein for a consideration of $50.00 Zubik, Sr., gave to Osbourne the exclusive right of option to purchase at any time prior to December 31, 1960, for a purchase price of $100,000.00, W-364, provided the transfer was approved by the Commission. This transfer could not be made without complying with certain rules and regulations of the Commission.
On June 29, 1960, Zubik, Sr., at OsBourne's request, amended the option agreement and assigned W-364 to Pittsburgh, subject to approval by the Commission, with the understanding that upon the Commission's approval of the transfer Pittsburgh would issue to Zubik, Sr., 2,500 shares of its capital stock. Pittsburgh was formed in 1959 by Osbourne and the stock was issued to Osbourne (100 shares), to Douglas B. Meyers, an employee of Osbourne's (100 shares), and to a Francis X. Wiget (1 share). The change in the option agreement was made in an effort to facilitate the transfer of W-364. Osbourne had until December 31, 1960, to exercise his option to purchase the 2,500 shares from Zubik, Sr., on exchange for the $100,000.00 agreed upon in the option agreement of June 9, 1960. The Commission approved this transfer of W-364 on the theory that Zubik, Sr., was merely incorporating to operate his certificate.
It is clear that the change in the option agreement was a mere subterfuge to enable Zubik, Sr., and Osbourne to circumvent the transfer rules and regulations of the Commission, and this court so held when it entered its decree annulling *4 the Commission's approval of the transfer, and permanently enjoining the Commission from allowing a transfer of W-364 to Pittsburgh until such time as Zubik, Sr., complied with the rules and regulations of the Commission.
On March 25, 1966, pursuant to this court's memorandum opinion of February 18, 1966, the clerk of the court entered an order setting aside the Commission's orders authorizing the said transfer.
A notice of appeal was filed on this court's decision, and an appeal was taken to the Supreme Court of the United States. On November 7, 1966, the Supreme Court granted a motion to dismiss the appeal on the grounds that there had been a failure to make timely filing of the jurisdictional statement involved. A petition for rehearing was denied on December 5, 1966. At this time this court's stay of its prior order pending appeal was automatically set aside and the court's order became effective as of that date, December 5, 1966.
While the said appeal was pending, Zubik, Sr., died on August 25, 1966, and W-364 then passed to his executors, Charles Zubik, Jr., and Virginia Zubik Drambel (hereinafter referred to as the executors). On September 26, 1966, the executors, by affidavit, adopted the Zubik-Osbourne transaction and they requested the Commission to approve the transfer. By this time Osbourne had paid Zubik, Sr., a considerable sum of money on the option agreement.
On January 17, 1967, the Commission entered an order (reinstating a prior order) implementing this court's decision of February 18, 1966, whereby the said transfer to Pittsburgh was annulled and Pittsburgh was ordered to cease all operations under W-364, and the tariff which Pittsburgh had filed to operate under W-364 was stricken from the Commission records.
By this time Pittsburgh had ostensibly ceased all operations under W-364; however, on January 10, 1967, just prior to this final order of the Commission, the executors executed a power of attorney to Osbourne whereby Osbourne was permitted to file in Zubik's name a tariff to operate under W-364. The tariff which Osbourne filed by authority of the power of attorney and approved by the Commission was identical in every minute detail to the tariff under which Pittsburgh had conducted its illegal operations. In short, it was and is the same tariff.
John T. Walsh (an investigator for the Commission) testified that he had an interview with Osbourne at his office on February 13, 1967. The substance of this interview was that Osbourne had been given the power of attorney by the executors and that the said power of attorney authorized Osbourne to completely run W-364; that on February 12, 1967, Pittsburgh ceased all operations as such and that a similar operation was being conducted in the name of Charles Zubik, because Osbourne was afraid that if operations were not continued under W-364 the certificate might be revoked, and he wanted to recover $88,000.00 which he had paid Zubik, Sr., in installments on the option agreement; that the operations would continue until he got his money (assuming the operation was profitable) and after that he would continue in the capacity of manager; that a special bank account had been set up in Zubik's name, but that Osbourne could draw from the account; and that outside firms provided the towboats.
Walsh had another interview with Osbourne on February 15, 1967, and at this meeting Zubik, Jr., was present. This interview revealed that Zubik, Jr., was advised of major financial decisions in the W-364 operation, but that he did not devote all of his time to the operation since he was the manager of a concrete and gravel firm and had other problems with respect to the Estate. The Zubik Estate owned some towboats and barges, but these boats were not used in the operation of W-364.
Walsh had still another interview with Osbourne on March 10, 1967. This interview revealed that Meyer (an employee of Osbourne) was acting as office manager of the operation; and that Osbourne *5 made out all of the deposits to Zubik's account.
Walsh testified that he received a copy of the inventory of Zubik's estate and that W-364 was not listed as an asset thereon, nor were there any claims filed by Osbourne against the Estate.
The testimony of Edmund D. Osbourne and Charles Zubik, Jr., disclosed that there was a signed agreement (Exhibit 3), dated January 6, 1967, which agreement was signed by Western Rivers Corporation (hereinafter referred to as Western), by Edmund D. Osbourne, President, and accepted by the Estate of Charles Zubik, signed by Charles Zubik, Jr., Executor.
The agreement provided in part: "Western Rivers Corporation will undertake the management of Certificate W-364, operating same * * *."
Western is a corporation owned by Osbourne, which has not been in active operation before this date for some time and is really a shell, and when Osbourne was questioned with respect to its corporate powers he was unable to state that it had authority to manage any such operation, and in fact, when read what purported to be its corporate powers, could point out no reference to any part that would grant such authority.
Both Osbourne and Zubik admitted they told Walsh that Osbourne was the manager of the operation of Certificate W-364, and that the operation was really the Zubik Estate, and at no time advised Walsh of Western's position in the operation. The testimony of Osbourne, Zubik, and other witnesses, conclusively shows that the operation under W-364 before January 1, 1967, and after January 1, 1967, was identical in every respect, except for the name under which the operation was conducted, and the name under which the bank account was kept and the billings made.
Both Osbourne and Zubik testified that the income from the operation after January 1, 1967, was placed in a bank account in Zubik's name, subject to withdrawal by checks signed by Osbourne, Osbourne's wife, and Zubik, Jr.; that Zubik had only drawn one, two or three checks on the account, and those checks were for such purposes as payment to the Commission for filing fees when the tariff was filed. Osbourne drew checks on the account in favor of Western, and Western paid all operating expenses amounting to some fifty-five hundred to six thousand dollars a month, twelve hundred dollars of which was paid each month to Osbourne.
An examination of the agreement of January 6th (Exhibit 3) discloses that it is in many ways a partnership agreement. As an example, it says:
"The problem remains for us to reach an agreement which will protect all of us while keeping the Authority in effect, as well as complying with the unhappy court order in St. Louis. * * * We agree particularly under a new law we cannot afford to allow the Authority to lapse. If we cannot continue the active life of the Certificate it becomes a liability for both of us instead of an asset for both of us."
It ends up by stating:
"If you will pledge yourselves to every cooperation, particularly with respect to additions to the Authority, we will pledge ourselves to the maintenance of its vigorous life."
In this connection, the "you" in the exhibit refers to the Zubik Estate.
The testimony of Osbourne and Zubik further disclosed that under their agreement if the operation of W-364 was unprofitable Osbourne would personally take care of all losses, holding the Zubik Estate harmless. While this is not included in Exhibit 3, both witnesses testified to this fact. On June 8, 1967, an affidavit was signed by Charles Zubik, Jr., Executor, and Virginia Zubik Drambel, Executrix, which affidavit was filed with the clerk of the court on June 19, 1967, and which affidavit states in part:
"Certificate W-364 originally issued to Charles Zubik in 1953, is being operated for the best advantage of the Zubik Estate, subject to the supervision of the courts of Allegheny County, Pennsylvania."
*6 It is interesting to note that the affidavit does not say that Certificate W-364 is being operated by the Zubik Estate, but rather it says for the best advantage of the Estate. While the affidavit says the operation is "* * * subject to the supervision of the courts of Allegheny County * * *", it is admitted that W-364 is not listed as an asset of the Estate, and no orders have been made by the courts of Allegheny County with respect to W-364 or its operation or anything in any kind pertaining thereto.
The preceding facts lead to one inescapable conclusion; that is, that Edmund D. Osbourne, through Charles Zubik, Jr. and Virginia Zubik Drambel, Executors of the Estate of Charles Zubik, is employing but another subterfuge, as he previously did with Pittsburgh Towing Company, to avoid compliance with the decree of this court and with the judgment and order of the Commission. This court's decree in this case had the effect of permanently enjoining Pittsburgh (Osbourne's alter ego) from conducting any operations under W-364 until it complied with the rules and regulations of the Commission. It is evident that Osbourne has not ceased his illegal operation under W-364, but has merely changed names, and is now operating in the same manner as before the court's decision, and using the Zubik name for operations instead of Pittsburgh as his alter ego. There has been a vain attempt to show that the operation of the certificate is now by Zubik, Jr., and not Osbourne, but the facts show otherwise.
In the final analysis, the only operation that could be and is continuing under W-364 at this time is that of Osbourne.
It has been argued that the United States may not bring the present injunction motion and that this court does not have jurisdiction over Osbourne who was not a party to the primary action and did not intervene therein as the Zubiks did.
It is well settled that the courts of the United States have the inherent and statutory (28 U.S.C.A. § 1651) power and authority to enter such orders as may be necessary to enforce and effectuate their lawful orders and judgments, and to prevent them from being thwarted and interfered with by force, guile, or otherwise. Federal Trade Commission v. Dean Foods Co., 384 U.S. 597, 86 S.Ct. 1738, 16 L.Ed.2d 802; Faubus v. United States, 254 F.2d 797 (CA 8); United States v. Wallace, 218 F.Supp. 290 (DC Ala.). This rule applies whether or not the person charged with the violation of the judgment or decree was originally a party defendant to the action.
The intervenors and Osbourne have willfully and deliberately violated this court's decree and the order of the Interstate Commerce Commission of January 12, 1967, by employing deceptive and deceitful tactics. It clearly appears in the record of this case (and the plaintiffs have supplied an affidavit) that unless an injunction is issued the plaintiffs will suffer irreparable injury resulting from the obstruction of the lawful order and decree of this court and the consequent impairment of this court's integrity and the judicial process of the United States of America.
Although Charles Zubik, Jr., as Executor, and Virginia Zubik Drambel, as Executrix, of the Estate of Charles Zubik, Deceased, as intervenors, and Edmund D. Osbourne, were not parties to the proceedings to enjoin, set aside and annul Certificate No. W-364 (252 F.Supp. 162), it is conceded that they had actual knowledge of this court's decree entered in that case. Additionally, we find that they have been and are acting in concert with Pittsburgh Towing Company. This being the situation, our decree is binding upon them and the motion to enforce the judgment shall extend to them as well as the Pittsburgh Towing Company.
A motion to enforce judgment is a proper procedure to be utilized to compel compliance with the court's decision in a case of this type. Eastern Central Motor Carriers Ass'n v. United States, 251 F.Supp. 483; Movers Conference of America v. United States, 251 F.Supp. 882.
*7 For the foregoing reasons the motion to enforce judgment and commission's order with respect to Pittsburgh Towing Company, a corporation, Charles Zubik, Jr., Executor, and Virginia Zubik Drambel, Executrix, of the Estate of Charles Zubik, intervenors, and Edmund D. Osbourne, will be sustained and the injunction sought thereof entered.
In light of the evidence and our findings and conclusions, we believe that the Interstate Commerce Commission should be afforded the opportunity to give further consideration to striking the tariff filed on behalf of the Zubik Estate. An appropriate order will be entered remanding this phase of the proceeding to the Interstate Commerce Commission, with directions to again consider whether the tariff in question should be stricken.
This memorandum opinion is hereby adopted by the court as its findings of fact and conclusions of law.