**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

No. 97-60308

---

JOHN HENDERSON, JR.,

Petitioner,

VERSUS

OFFICE OF THRIFT SUPERVISION, DEPARTMENT OF TREASURY,

Respondent.

---

Petition for Review of an Order of the
Office of Thrift Supervision

---

March 4, 1998

Before REYNALDO G. GARZA, DUHÉ, and STEWART, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

This is an appeal from interlocutory rulings issued by an administrative law judge ("ALJ") and by the Director of the Office of Thrift Supervision ("OTS") denying petitioner's motion for summary disposition of an OTS Notice of Charges against him. We find below that petitioner has not brought a final administrative order before us to review. Accordingly, this Court is without jurisdiction to reach the merits of petitioner's arguments.

### I. Factual and Procedural Background

On April 12, 1995, the OTS issued a Notice of Charges against John Henderson, Jr., former officer and director of Home Savings and Loan Association, Lufkin, Texas ("Home Savings"), and Southland Savings Association, Longview, Texas ("Southland"), under 12 U.S.C. §§ 1818(b) and (e) (1997). Home Financial Corporation ("HFC"), a savings and loan holding company, owned Home Savings. A wholly owned subsidiary of Home Savings owned 96.8% of the stock of Southland. The OTS is seeking an order prohibiting Henderson from further

1

participation in the conduct of the affairs of any federally-insured depository institution. The OTS is also seeking an order to cease and desist for, among other things, the payment of restitution to the Savings Association Insurance Fund ("SAIF") for losses incurred by Home Savings and Southland as a result of certain unsound practices, violations, and breaches of fiduciary duty that Henderson allegedly engaged in and committed while acting as an officer and director of Home Savings and Southland.

According to Henderson, he served as President and Chairman of the Board of HFC until July, 1987 and was the controlling shareholder of HFC until at least December 31, 1988.[1] Henderson resigned his positions with Home Savings and Southland in June, 1987. The Federal Savings and Loan Insurance Corporation ("FSLIC") declared Home Savings and Southland insolvent and placed them into receivership on December 22, 1988 and August 18, 1988, respectively.

The OTS Notice of Charges alleged that Henderson engaged in unsafe and unsound banking practices, violated laws and regulations, and breached his fiduciary obligations to Home Savings and Southland. The Notice alleged that during the period from 1982 through 1986, Henderson caused Home Savings to make a series of acquisition, development, and construction loans ("ACD loans") in reckless disregard of applicable regulations and the safety and soundness of Home Savings. The Notice further alleged that after Home Savings acquired Southland in 1984 Henderson improperly caused Southland to use its assets to help fund Home Savings' ACD loans.

Previously, on August 16, 1991, the Federal Deposit Insurance Corporation ("FDIC") had sued Henderson in the United States District Court for the Eastern District of Texas for breach of duties, gross negligence, and negligence concerning Henderson's activities as an officer and director of Home Savings and Southland, specifically including those activities related to Home

---

[1] The brief for OTS and the ALJ's Order on Motion for Summary Disposition state that Henderson personally owned approximately 55% of HFC's stock, and the OTS Order on Respondent's Motion for Summary Disposition notes that Henderson owned or controlled 82% of the voting stock of HFC.

Savings' ACD loans. *See Federal Deposit Ins. Corp. v. Henderson*, 61 F.3d 421 (5th Cir. 1995) [hereinafter *F.D.I.C. v. Henderson*]. At trial, a jury found that Henderson had been grossly negligent and had breached his fiduciary duties to Home Savings and Southland, thereby causing them to incur $7 million in damages ($5 million to Home Savings, $2 million to Southland). *See Henderson*, 61 F.3d at 423. The jury also found, however, that the theory of adverse domination did not toll the statute of limitations. *Id.* Based on this finding, the district court held all the claims time-barred and entered a take-nothing judgment against the FDIC on March 31, 1994. *Id.* On April 11, 1994, the FDIC filed a motion for a new trial or to alter or amend the judgment, which the district court denied on April 18, 1994. *Id.* The FDIC appealed, and the Fifth Circuit affirmed on August 21, 1995. *Id.* at 431.

On August 3, 1994, while the appeal in *F.D.I.C. v. Henderson* was pending, the OTS agreed with the FDIC to issue and pursue the Notice of Charges involved in this case, provided that the FDIC pay all attorney fees and costs. On January 4, 1995, the OTS and the FDIC executed a supplemental agreement by which the FDIC also agreed to pay the OTS for its investigators, field examiners, and supervisory examiners. The Acting OTS Chief Counsel also noted: "We would anticipate basing any enforcement action we might bring on the FDIC lawsuit."

Meanwhile, on August 15, 1994, the OTS requested an agreement from Henderson to toll the applicable limitations period. The OTS and Henderson executed a tolling agreement suspending until December 22, 1994 any limitations periods that might prevent the OTS from bringing an enforcement proceeding related to Henderson's involvement with Home Savings and Southland. The agreement also provided that it did not revive any claims that had already expired. Subsequently, Henderson and the OTS extended the end date of the agreement through April 15, 1995.

As stated, the OTS issued the Notice of Charges against Henderson on April 12, 1995. Henderson filed his answer on May 1, 1995, asserting various affirmative defenses, including the expiration of the applicable limitations provision and *res judicata*. On May 18, 1995, Henderson

filed a Motion for Summary Disposition claiming that the limitations period and *res judicata* barred the OTS' administrative enforcement proceeding.

On May 13, 1996, an ALJ entered an order denying Henderson's Motion for Summary Disposition. The ALJ found that Henderson was an institution affiliated party ("IAP") of both Home Savings and Southland because Henderson was a controlling shareholder of Home Savings and Southland by virtue of his status as HFC's majority shareholder at least through December, 1988. The ALJ found, therefore, that Henderson was an IAP of Home Savings and Southland within the six-year limitations period preceding Henderson's execution of the tolling agreement with the OTS in August 1994. *See* 12 U.S.C. § 1818(i)(3) (1997) (providing for six-year limitations period beginning on date party ceases to be IAP with regard to relevant depository institution). Finally, the ALJ concluded that *res judicata* did not bar the OTS proceeding, deferring to the public policy embodied in the statutory scheme providing for proceedings by receivers and by administrative agencies.

On May 23, 1996, Henderson moved for interlocutory review of the ALJ's Summary Disposition Order before the OTS Director. The Acting Director's Order denied the motion on the *res judicata* issue, but granted it with respect to the limitations issue. On April 4, 1997, another OTS Director issued an order on Henderson's Motion for Summary Disposition rejecting Henderson's limitations period challenge and affirming the ALJ's denial of Henderson's Motion for Summary Disposition. On May 7, 1997, Henderson filed his Petition for Review with this Court.

## II. This Court is without jurisdiction to hear this appeal.

Neither the statutory scheme applicable to judicial review of OTS enforcement proceedings nor the All Writs Statute provide this Court with jurisdiction to consider Henderson's appeal. Section 1818(h) of Title 12 of the United States Code does not provide this Court with jurisdiction to hear this case because no final agency order with respect to the Notice of Charges is at issue. Furthermore, we decline to invoke the All Writs Statute as a jurisdictional predicate

4

because Henderson's claims are not ripe for judicial review and no extraordinary circumstances exist to justify application of the All Writs Statute in this case.

**A.       Section 1818(h)(2) does not confer jurisdiction in this case**.

Section 1818(h)(2) provides in pertinent part:

> Any party to any proceeding under paragraph (1) of this section may obtain review of any order served pursuant to paragraph (1) of this subsection . . . by filing in the court of appeals of the United States for the circuit in which the home office of the depository institution is located . . . .

12 U.S.C. § 1818(h)(2).  In turn, § 1818(h)(1) provides:

> After [any hearing provided for in this section], and within ninety days after the appropriate Federal banking agency . . . has notified the parties that the case has been submitted to it for final decision, it shall render its decision . . . and shall issue and serve upon each party to the proceeding an order or orders consistent with the provisions of this section.  Judicial review of any such order shall be exclusively as provided in this subsection (h) of this section. . . .

12 U.S.C. § 1818(h)(1).  As such, jurisdiction under § 1818(h)(2) turns on whether the orders Henderson is appealing are the types of orders described in § 1818(h)(1), i.e., orders with respect to a post-hearing final decision.

Section 1818(h)(2) does not support jurisdiction in this case because the rulings appealed from do not represent a final decision after a hearing provided for by § 1818.  The OTS issued the Notice of Charges against Henderson pursuant to § 1818(b), which authorizes cease and desist proceedings, and § 1818(e), which authorizes the OTS to prohibit an IAP's further participation in the conduct of the affairs of any insured depository institution.  Both of these sections require a hearing to establish the grounds set forth in the Notice of Charges.  *See* 12 U.S.C. §§ 1818(b)(1), (e)(4).  The administrative evidentiary hearing authorized by §§ 1818(b) and (e) on the Notice of Charges filed against Henderson is scheduled to commence on February 23, 1998.

Section 1818(h) authorizes review of orders issued after a hearing provided for by § 1818, which in this case will not occur until February, 1998; therefore, § 1818(h) cannot confer jurisdiction on this Court to review the rulings at issue.  Section 1818(h)(2) authorizes review in the court of appeals of "any order served *pursuant to paragraph (1) of this subsection*."  12

5

U.S.C. § 1818(h)(2) (emphasis added). Paragraph (1) of subsection 1818(h) deals with decisions rendered and orders issued and served "within ninety days after the appropriate Federal banking agency . . . has notified the parties that the case has been submitted to it for final decision," and after "any hearing provided for in this section," such as those provided for in §§ 1818(b) and (e). 12 U.S.C. § 1818(h)(1). The orders that Henderson is appealing are interlocutory rulings, as opposed to final agency decisions resulting from the hearings provided for by §§ 1818(b) and (e); therefore, § 1818(h)(2) does not confer jurisdiction on this Court to review those orders.

**B.     The All Writs Statute does not confer jurisdiction in this case.**

The All Writs Statute provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. 1651(a). Henderson cites *Mississippi Valley Barge Line Co. v. United States*, 273 F. Supp. 1 (E.D. Mo. 1967), *aff'd Osbourne v. Mississippi Valley Barge Line Co.*, 389 U.S. 579 (1968), and *Gregris v. Edberg*, 645 F. Supp. 1153 (W.D. Pa. 1986), for the proposition that:

> It is well settled that the courts of the United States have the inherent and statutory (28 U.S.C.A. § 1651) power and authority to enter such orders as may be necessary to enforce and effectuate their lawful orders and judgments, and to prevent them from being thwarted and interfered with by force, guile, or otherwise.

*Mississippi Valley Barge Line*, 273 F. Supp. at 6; *cf. Gregris*, 645 F. Supp. at 1156. The United States Supreme Court stated, in *United States v. New York Tel. Co.*, 434 U.S. 159 (1977), that "[t]his Court has repeatedly recognized the power of a federal court to issue such commands under the All Writs Act as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained . . . ." 434 U.S. at 173.

Nevertheless, courts rely upon the All Writs Statute infrequently, because writs are "drastic" remedies which a court should invoke only in "extraordinary situations." *See, e.g., Kerr v. United States District Court*, 426 U.S. 394, 402 (1976); *see also Lewis v. Reagan*, 660 F.2d 124, 128 (5th Cir. 1981) ("It is well established that courts should interrupt the orderly flow of

6

administrative proceedings only under extraordinary circumstances . . . .").  In the context of an interlocutory administrative order, this rule is particularly consistent with the requirement of exhaustion of administrative remedies.  It is a fundamental principle of administrative law that "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedies are exhausted."  *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51 (1938).  "The exhaustion requirement avoids premature interruption of the administrative process and allows the administrative agency to utilize its discretion, apply its expertise, correct its own errors, and handle its business expeditiously."  *Lewis*, 660 F.2d at 127.

Henderson's claims are not ripe for judicial review, which belies Henderson's argument that this is an extraordinary situation appropriate for review under the All Writs Statute.  *See Caprock Plains Fed. Bank Ass'n v. Farm Credit Admin.*, 843 F.2d 840, 844 (5th Cir. 1988) (stating that factors relevant to the ripeness inquiry include whether challenged agency action constitutes final agency action).  The interlocutory ruling by the OTS Director simply is not the OTS' final say in the enforcement proceeding and, therefore, is not final agency action for purposes of the ripeness inquiry.  The logic of that proposition is evident because the administrative hearing on the Notice of Charges against Henderson has not even occurred yet.

Invoking the All Writs Statute at this point of the proceedings would fly in the face of the exhaustion requirement by preventing the OTS from utilizing its discretion, applying its expertise, correcting its own errors, and handling its business expeditiously.  *See Lewis*, 660 F.2d at 127.  In *In re Willy*, 831 F.2d 545 (5th Cir. 1987), this Court noted that "it is usually 'more efficient for the administrative process to go forward without interruption than it is to permit the parties to seek aid from the courts at various intermediate stages.'"  831 F.2d at 549 (quoting *McKart v. United States*, 395 U.S. 185, 194 (1969)).  Although the petitioner in *In re Willy* had not yet appealed the interlocutory ruling to the relevant agency's highest official, as Henderson did here, the Court nevertheless noted that "[i]f the petitioner loses and appeals from the final administrative order, this court may consider the entire case at one time, thus  avoiding piecemeal

review." *Id.* Similarly, and in accordance with the policy of requiring exhaustion of administrative remedies, this case does not justify the drastic measure of invoking jurisdiction under the All Writs Statute.

## *Conclusion*

Section 1818(h) does not authorize this Court to review the OTS' interlocutory rulings because those rulings are not final agency decisions resulting from the hearing provided for by §§ 1818(b) and (e), pursuant to which the OTS issued a Notice of Charges against Henderson. Furthermore, the incomplete and unripe administrative posture of this case counsels against taking the drastic measure of invoking the All Writs Statute as a basis for jurisdiction. As such, this Court is without jurisdiction over the case, and we hereby remand the matter to the OTS for completion of the administrative process.

REMANDED.