**UNITED STATES of America,
Plaintiff,**

v.

**George C. WALLACE, Defendant.**

**Civ. A. No. 63-255.**

United States District Court
N. D. Alabama, W. D.

June 5, 1963.

Robert F. Kennedy, Atty. Gen., Burke Marshall, Asst. Atty. Gen., St. John Barrett, Atty., Dept. of Justice, Washington, D. C., and Macon L. Weaver, U. S. Atty., Birmingham, Ala., for plaintiff.

J. Kirkman Jackson, Schuyler Baker and Reid Barnes, of Birmingham, Ala., and Thomas B. Hill, Jr., John Kohn and Hugh Maddox, Montgomery, Ala., for defendant.

LYNNE, Chief Judge.

The facts developed at the brief hearing before the court on June 3, 1963, when this action was submitted upon plaintiff's prayer for a temporary injunction may be concisely stated to highlight the emerging legal questions.

On July 1, 1955, Judge H. H. Grooms entered an order of this court in the case of Lucy et al. v. Adams, D.C., 134 F.Supp. 235, permanently enjoining the Dean of Admissions of the University of Alabama from denying Negroes the right to enroll therein and pursue courses of study thereat solely on account of their race or color. In supplemental proceedings, upon application of Vivian J. Malone and certain other Negro citizens of Alabama, Judge Grooms, on May 16, 1963, entered an order determining that the court's order of July 1, 1955, was still in force and effect; that it was binding upon Hubert E. Mate, who succeeded William F. Adams as Dean of Admissions, and that Negroes with pending applications for enrollment in such University could apply to this court for enforcement of the order of July 1, 1955.

Thereafter, on May 21, 1963, Judge Grooms heard a motion filed on behalf of eleven members of the Board of Trustees of such University for leave to intervene in the case of Lucy et al. v. Adams, and to modify and suspend this court's order of July 1, 1955, as interpreted on May 16, 1963. In their motion, the members of the Board appearing therein represented to the court that Vivian J. Malone and David M. McGlathery, each a Negro citizen of the State of Alabama and an applicant for enrollment in the University, were qualified to be enrolled under the terms of the July 1, 1955, order, but requested that implementation be delayed because of the prevailing climate of racial unrest. On May 21, 1963, Judge Grooms allowed the intervention of such Trustees but denied their motion to modify and suspend the order of July 1, 1955.

The Honorable George C. Wallace, Governor of Alabama, referring to the May 21, 1963, order entered by Judge Grooms, has stated and reiterated publicly that he will be present to bar the entrance of any Negro who attempts to enroll in the University of Alabama. He has also pledged that law and order will be maintained.

Thoughtful people, if they can free themselves from tensions produced by established principles with which they violently disagree, must concede that the governor of a sovereign state has no authority to obstruct or prevent the execution of the lawful orders of a court of the United States. No legalistic formula is required to express the craving of hon-

est, hard working, God fearing citizens for a moral order logically supported, an attitude long ago expressed when Coke informed King James that there was a law above the King.

■ In the final analysis, the concept of law and order, the very essence of a republican form of government, embraces the notion that when the judicial process of a state or federal court, acting within the sphere of its competence, has been exhausted and has resulted in a final judgment, all persons affected thereby are obliged to obey it.

More than three decades ago, Chief Justice Hughes, writing for a unanimous court, declared:

" * * * In particular, to the process of the federal court actually and properly engaged in examining and protecting an asserted federal right, the Governor interposed the obstruction of his will, subverting the federal authority. The assertion that such action can be taken as conclusive proof of its own necessity and must be accepted as in itself due process of law has no support in the decisions of this Court." Sterling v. Constantin, 287 U.S. 378, 402, 53 S. Ct. 190, 197, 77 L.Ed. 375 (1932).

Immediately thereafter, 287 U.S. at page 403, 53 S.Ct. at page 197, 77 L.Ed. 375, he anticipated and disposed of the contention advanced in behalf of the defendant herein that this court is bound to stay its hand at least until defiant threats have ripened into actual subversion of federal authority by observing:

"The argument of appellants intimates, while it reserves the question, that it may be possible for the courts to call upon the Governor, after the alleged emergency has passed, to account for what he has done, but that they may not entertain a proceeding for injunction. The suggestion confuses the question of judicial power with that of judicial remedy. If the matter is one of judicial cognizance, it is because of an alleged invasion of a

right, and the judicial power necessarily extends to the granting of the relief found to be appropriate according to the circumstances of the case."

■■ Too well settled in the law to admit of persuasive arguments to the contrary are the twin propositions that the courts of the United States have statutory authority under 28 U.S.C.A. § 1651 as well as inherent power to enter such orders as may be necessary to effectuate their lawful decrees and to prevent interference with, and obstruction to, their implementation, and that the United States has standing to seek the injunctive relief for which it prays. United States v. Mississippi, 7 Race Relations Law Reporter 1105 (5th Cir., 1962), cert. den. Mississippi v. Meredith, 372 U.S. 916, 83 S.Ct. 722, 9 L.Ed.2d 723 (1963); Faubus v. United States, 254 F.2d 797 (8th Cir., 1958), cert. den. 358 U.S. 829, 79 S.Ct. 49, 3 L.Ed.2d 68; Toledo Scale Co. v. Computing Scale Co., 261 U.S. 399, 43 S.Ct. 458, 67 L.Ed. 719; Bullock v. United States, 265 F.2d 683, 691 (6th Cir., 1959); Bush v. Orleans Parish School Board, 188 F.Supp. 916 (E.D. La.), aff'd 365 U.S. 569, 81 S.Ct. 754, 5 L.Ed.2d 806, and sub nom. New Orleans v. Bush, 366 U.S. 212, 81 S.Ct. 1091, 6 L.Ed.2d 239; Bush v. Orleans Parish School Board, 190 F.Supp. 861 (E.D. La.), aff'd 365 U.S. 569, 81 S.Ct. 754, 5 L.Ed.2d 806; Bush v. Orleans Parish School Board, 191 F.Supp. 871 (E.D. La.), aff'd sub nom. Legislature of Louisiana v. United States, 367 U.S. 908, 81 S.Ct. 1925, 6 L.Ed.2d 1250; Bush v. Orleans Parish School Board, 194 F.Supp. 182 (E.D.La.), aff'd 368 U.S. 11, 82 S. Ct. 119, 7 L.Ed.2d 75.

It clearly appears that unless an injunction is issued pending submission of this action on the prayer for final relief in a trial on the merits, the plaintiff will suffer irreparable injury resulting from obstruction to the lawful orders of this court and the consequent impairment of the judicial process of the United States.

May it be forgiven if this court makes use of the personal pronoun for the first

.time in a written opinion. I love the people of Alabama. I know that many of both races are troubled and, like Jonah of old are "angry even unto death" as the result of distortions of affairs within this State, practiced in the name of sensationalism. My prayer is that all of our people, in keeping with our finest traditions, will join in the resolution that law and order will be maintained, both in Tuscaloosa and in Huntsville.