UNITED STATES of America, Plaintiff,

v.

CITY OF DETROIT, a Municipal corporation, and Detroit Water and Sewerage Department, Defendants,

and

State of Michigan, Defendant and Cross-Plaintiff.

Civ. A. No. 7-71100.

United States District Court, E. D. Michigan, S. D.

March 21, 1979.

James K. Robinson, U. S. Atty., Charles J. Kalil, Asst. U. S. Atty., Detroit, Mich., for plaintiff.

Kay D. Schloff, Darryl F. Alexander, Detroit, Mich., Thomas J. Emery, Asst. Atty. Gen., Lansing, Mich., for defendants.

Darden, Neef & Heitsch by Lawrence D. Heitsch, Detroit, Mich., for Oakland Township, Carolyn L. Phelps and Alfred J. Taylor.

Owen J. Cummings, Livonia, Mich., for Redford Township.

Allen, James, Snow, Witthoff, Richard G. James, Taylor, Mich., for VanBuren Township.

David J. Adams, Detroit, Mich., for City of Orchard Lake Village.

Stewart, O'Reilly, Cornell, Donovan, Lascoe & Rancilio, Sterling Heights, Mich., for City of Sterling Heights.

John E. Breen, Detroit, Mich., for Wayne County Road Commission.

Dale A. Jurcisin, Westland, Mich., for City of Westland et al.

George B. Catlin, City Atty., Grosse Pointe Woods, Mich., for Grosse Pointe Woods.

Gary P. Gordon, Lansing, Mich., for State of Michigan.

Kenneth Kruse, Allen Park, Mich., for City of Allen Park, Frank Lada, Mayor or Laura Maples, Clerk.

James M. Hacker, Fraser, Mich., for City of Center Line, City of Fraser, Township of Shelby.

Bodman, Longley, Bogle & Dahling, Andrew J. Broder, Troy, Mich., for Grosse Point Park.

McLean & Mijak by J. Gerald McLean, Romeo, Mich., for Village of Romeo.

William P. Hampton, Farmington Hills, Mich., for City of Birmingham, and Village of Franklin, City of Farmington Hills, Township of Oxford, Bloomfield Township, City of Troy, Keego Harbor (city of), City of Lathrup Village, West Bloomfield Township, Waterford Township, City of Sylvan Lake, City of Bloomfield Hills, City of Ferndale, City of Novi, Village of Oxford, City of Royal Oak, City of Hazel Park, Pontiac Township, Independence Township, Orion Township, Oakland County D.P.W., City of Pleasant Ridge and City of Utica.

Ronald Deziel, Asst. Corp. Counsel, Dearborn, Mich., for City of Dearborn.

William Wolanin, Troy, Mich., for City of Troy.

Robert Boyd Armstrong, Plymouth, Mich., for Novi Township.

Robert P. Dank, Mount Clemens, Mich., for Macomb Township.

Charles R. Towner, Mount Clemens, Mich., for Clinton Township.

Ronald E. Mack, Detroit, Mich., for City of Garden City.

Harry C. Tatigian, Livonia, Mich., for City of Livonia.

Travis, Warren, Nayer & Burgo, Bert Burgoyne, Detroit, Mich., for Canton Township.

Mayor A. Malcolm Allen, Northville, Mich., for City of Northville.

John M. Donohue, Farmington, Mich., for City of Farmington Hills.

Gerald B. Poole, Dearborn Heights, Mich., for City of Dearborn Heights.

Davidson, Gotshall, Kohl, Secrest, Wardle, Lynch & Clark, Farmington Hills, Mich., for City of Birmingham, City of Lathrup Village, West Bloomfield Township, Waterford Township, City of Sylvan Lake, City of Bloomfield Hills, City of Ferndale, City of Novi, Village of Oxford, City of Royal Oak, City of Hazel Park, Pontiac Township, Independence Township, Orion Township, Oakland County D.P.W., City of Pleasant Ridge and City of Utica.

Julio H. Moscone, Utica, Mich., Lonnie R. Snowden, Detroit, Mich., for Royal Oak Township.

Allan G. Hertler, Royal Oak, Mich., for Cities of Clawson and Huntington Woods.

Charles E. Lowe, Plymouth, Mich., for City of Plymouth.

John B. Bruff, Mount Clemens, Mich., for Harrison Township.

Howard E. Snapp, Mount Clemens, Mich., for County of Macomb.

Russell W. Schmidt, Westland, Mich., for City of Wayne.

Parvin Lee Jr., Pontiac, Mich., for Village of Clarkston.

Donald C. Morgan, Detroit, Mich., for Township of Northville and Township of Plymouth.

Lawrence R. Ternan, Bloomfield Hills, Mich., for Avon Township.

George E. McKean, John K. Renke, II, Detroit, Mich., for City of Grosse Pointe Farms.

George W. Moore, Highland Park, Mich., for City of Highland Park and Jesse P. Miller.

Gary S. Anthony, Mount Clemens, Mich., for Townships of Washington, Chesterfield & Bruce.

Ronald H. Greve, Roseville, Mich., for City of Roseville, City of Harper Woods.

Lawrence O. Hinkle, Detroit, Mich., for Wayne County Dept. of Health–Air Pollution Control Division, Wayne County Board of Public Works.

Milton E. Higgs, Bay City, Mich., for County of Bay, third party plaintiff.

Robert E. Kleeb, Howell, Mich., for City of Howell.

Alan R. Dominick, Jackson, Mich., for City of Jackson.

## ORDER APPOINTING ADMINISTRATOR OF CITY OF DETROIT WASTEWATER TREATMENT PLANT

FEIKENS, District Judge.

Upon motion of the plaintiffs herein, this Court issued an Order to Show Cause on October 18, 1978, requiring the City of Detroit to appear before this Court and show cause why it should not comply with the current effluent limitations and other matters specified in such Order as required by the Consent Judgment entered in this Court on September 14, 1977, effective September 9, 1977.

The City of Detroit having filed an answer to the Order to Show Cause, a hearing was conducted on November 16, 17 and 20, 1978 and February 26, 27, March 5, 6 and 7, 1979.

On March 21, 1979, after consideration of the evidence presented at the hearing, of the briefs filed by the parties, and of the report of the Monitor heretofore submitted to the Court, this Court issued its Opinion in which it found that the appointment for the City of Detroit Wastewater Treatment Plant of an administrator of operations, empowered to exercise extraordinary remedies in the control, management and operation of the Wastewater Treatment Plant, was necessary to achieve compliance with the requirements of the Consent Judgment at the earliest possible date.

This Court has further determined that the appointment of Coleman A. Young, Mayor of the City of Detroit, as administrator of operations would be appropriate in that the administrator would then be a person already familiar with the operations of the City of Detroit and the Water and Sewerage Department and would avoid any radical change in the management of the Wastewater Treatment Plant, and would not have the effect of relieving the City of Detroit of its obligations under the Consent Judgment.

Upon consideration of the foregoing and pursuant thereto, and Mayor Young having agreed to accept the responsibility of being administrator of the Wastewater Treatment Plant,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1. That Coleman A. Young, Mayor of the City of Detroit, be and he hereby is appointed as administrator of the Wastewater Treatment Plant of the Water and Sewerage Department of the City of Detroit for the purposes of carrying out the obligations of the City of Detroit under the Consent Judgment entered by this Court on September 14, 1977. It is ordered that this appointment as administrator be for a period of one (1) year from the date of this Order, unless and until the administrator requests to be relieved and the Court orders a termination of the administration before said date, or until this Order is otherwise modified or terminated by the Court.

The Administrator shall forthwith procure the services of a person able and experienced in the management and operation of wastewater treatment plants to assist him in carrying out his responsibilities under this Order. This assistant shall be responsible only to the Administrator. To this end, the Administrator may solicit the advice of the parties to this action, the City of Detroit Water and Sewerage Department engineering consultants, the Monitor, or others.

2. IT IS FURTHER ORDERED that the Administrator shall have full power and authority to control, manage and operate the City of Detroit Wastewater Treatment Plant, including all of the functions, duties, powers and authority of the Board of Water Commissioners of the City of Detroit, the Detroit Water and Sewerage Department, and any and all departments, boards or other Divisions of the City of Detroit insofar as they affect the Wastewater Treatment Plant and the City of Detroit's compliance with the Consent Judgment, without the necessity of any actions on the part of the Common Council of the City of Detroit when in the judgment of the Administrator the same might unavoidably delay or impede accomplishment by the City of Detroit with the provisions of the Consent Judgment.

3. IT IS FURTHER ORDERED that Coleman A. Young, Mayor of the City of Detroit, as Administrator herein is vested with the power and authority as provided under Rule 70 of the Federal Rules of Civil Procedure to perform any act necessary to achieve expeditious compliance with the Consent Judgment.

The Administrator shall be entitled to manage, control and deal with all items, assets, properties and articles that constitute or are related to the Wastewater Treatment Plant of the Detroit Water and Sewerage Department and shall have the authority required or necessary for the complete management and control of the plant, including but not limited to:

(a) the collection of its receivables,

(b) the payment of its debts,

(c) entering into and the performance of all contractual obligations of the system as pertains to the Wastewater Treatment Plant. Such contracts shall be subject to the requirement of competitive bidding except when in the judgment of the administrator it is necessary to waive the same, or as provided in paragraph 4 hereof.

(d) the supervision of all employees of the system, including the hiring or dismissal thereof,

(e) the hiring of such special consultants, contractors, engineering firms or counsel which the Administrator deems necessary,

(f) the borrowing of such funds and pledging of security therefor as is necessary to carry out the duties imposed upon the Administrator, provided, however that all powers delegated to the Administrator are subject to the established rights of existing bondholders as set forth in the Bond Ordinance of the City of Detroit and bonds issued pursuant thereto, which rights are explicitly recognized herein.

4. IT IS FURTHER ORDERED that a full scale test of the Wastewater Treatment Plant be conducted, in accordance with the plan entitled "Plan for a Full Scale Test of the Detroit Water and Sewerage Depart-ment's Wastewater Treatment Plant" dated March 14, 1979 submitted at the prior request of this Court, to determine whether the existing physical facilities at the Wastewater Treatment Plant have the capacity to achieve compliance with the effluent limitations scheduled to go into effect on December 31, 1979 and the capability of the personnel of the plant to operate the equipment to meet such limitations.

The Administrator is authorized to enter into such contracts as he deems necessary and appropriate under the circumstances, with or without competitive bidding, to accomplish the matters necessary for the full plant test under the plan referred to above.

5. IT IS FURTHER ORDERED that the members of the Board of Water Commissioners, City Council of the City of Detroit, and any and all other boards, departments, agents, servants and employees of the City of Detroit are enjoined from failing to immediately comply with this order and from interfering in any manner, or from failing to cooperate either directly or indirectly, with the Administrator in the performance of his functions and duties.

## OPINION

On May 6, 1977 in a wide ranging lawsuit brought here the Environmental Protection Agency of the United States (EPA) asked for sanctions under the Federal Water Pollution Control Act, 33 U.S.C. sec. 1251, *et seq.*, against the City of Detroit, its Water and Sewerage Department and against the State of Michigan. Because of the urgency created by the potential loss of some $400,-000,000 in grants from EPA to numerous cities in Michigan triggered by this lawsuit, numerous pre-trial proceedings were held.

Then on September 17, 1977, as a result of an agreement of the parties a consent judgment was entered in this cause. It is noteworthy that this judgment came about by agreement and not by adjudication. The consent judgment, comprised of some 32 pages, mandated compliance by the city and its sewerage department of such matters as financing, user charges, industrial cost re-

covery, local capital cost funding systems, industrial waste control, staff training, operation and maintenance, facilities planning, sludge disposal, secondary treatment, phosphorous removal, effluent limitations, reporting and other special requirements. Specific dates for compliance in each area are spelled out in the judgment.

Compliance with this judgment immediately presented difficulties. The court, being acquainted with the problems encountered by the parties, encouraged the formation of a working conference of representatives of the parties. This became known as the conference workshop. Its activities, while somewhat helpful, were nonetheless substantially unproductive.

On October 18, 1978 EPA sought and obtained an order directed to the City and its Sewerage Department requiring them to show cause why they should not be compelled immediately to comply with the consent judgment. Asking for stiff sanctions against defendants, plaintiff also sought the appointment of an "outside" receiver. In response to this request, this court appointed Professor Jonathan W. Bulkley * of the Engineering School of the University of Michigan as a monitor and instructed him to study the operations of the Detroit sewer facility and to make recommendations to the court regarding the sanctions and remedies sought by EPA. His report was to be filed on or before December 29, 1978. This was done. Thereafter, on a time schedule set by the court, the parties responded to the monitor's report. Extensive hearings were then held, and the court now has before it for decision what remedies, if any, are to be fashioned to bring about compliance.

It is clear that in many material aspects defendant City and its Sewerage Department concede non-compliance. "[They] recognize the validity of substantial portions of the Report of the Monitor particularly the conclusions and criticisms contained in Section III, Activities Not in Compliance with the Consent Judgment, as they relate to staffing, training, operations and maintenance and procurement problems." (City's response dated 1/12/79.)

This opinion will not contain a minute or extensively detailed statement of such concessions. Suffice it to say that as to the requirement of obtaining adequate staff and their training, defendants have not complied with the provision of paragraph III. A. 4., which requires that by July 1, 1978, defendants shall have procured and trained all personnel required to operate and maintain the wastewater facility. Additionally, contrary to the requirement of paragraph III. B. 3. defendants did not submit a continuing training program to the Michigan Department of Natural Resources (MDNR) and obtain its approval by or before November 1, 1978. While the judgment required that this continuing training program would be in full effect by April 1, 1979 according to paragraph III. B. 4., it now appears that compliance will not be obtained before July 1, 1979.

On January 12, 1979, in its response to the monitor's report, defendants indicate that they are still seeking personnel for the positions of head sewage plant operator and assistant head sewage plant operator. At the present time these positions are still vacant. That response also indicted that there were six vacancies in the position of senior sewage plant operator and these positions presently are still vacant. That response indicated that there were 35 vacancies in the position of sewage plant attendant and these positions are still vacant.

In defendant's Exhibit No. 17, Camp, Dresser & McKee, the City's consultant, said:

.  .  .  the persistent inability of the City to meet required staffing levels of operating personnel has undermined operations programs and severely burdened plant management with operational responsibilities that divert attention from administrative needs. Present management is consumed by the demands of

---

* Earlier he had served with Dean Ragone and Professor Edward Cooper on a panel, as mas-

ters, in a related and complex rate case, which resulted from this litigation.

crisis operating conditions that command priority over personnel, planning, budgeting, process evaluation, and other administrative functions. As with other problems at the plant, this situation feeds on itself; and as staffing deficiencies become more acute, management personnel have less and less time to devote to them.

Regarding treatment plant maintenance and repair there is also conceded significant non-compliance. The judgment required, in paragraph III. D. 1. (a) and (b), that by or before April 1, 1978 all vacuum filters and all incinerators were to be repaired and maintained in operating condition. This has not yet been done. The judgment required, in paragraph III. D. 4., that on or before July 1, 1978 flow monitoring equipment necessary to measure and record the quantity of the plant's effluent be renovated and/or installed and maintained. This has not been done, although further justifiable study may be needed.

Aeration decks have as yet not been repaired as required by paragraph III. D. 6., and the oxygen plant required by paragraph II. F. will not be completed by the required date of July 19, 1979.

Even though the judgment, in paragraph III. E., required the adoption of a procurement plan for materiel and while this is underway, procurement of needed supplies and materials on a satisfactory basis has not yet been attained.

In the vital area of sludge disposal, paragraph V.A. 1. 2., there is conceded non-compliance with the judgment's requirement that an interim sludge disposal plan be filed and approval obtained from the Michigan Department of Natural Resources. While this plan and related reports have been filed they have as yet not been accepted by MDNR. It is also conceded that the contract for interim sludge disposal which should have been awarded by or before March 1, 1978 and disposal begun by or before April 1, 1978, were delayed for 9 months. (See paragraph V.A. 3. 4.)

As to the requirement in the judgment relating to phosphorous removal, paragraph III, serious delay has occurred. Camp,

Dresser & McKee reports that the construction dates scheduled are 7½ months behind, but it should be noted that this consultant is also of the opinion that defendants will achieve the goal of a concentration of total phosphorous in the effluent no greater than 1 milligram per liter on or before April 1, 1982.

Paragraph VIII of the judgment contains the vital requirements on effluent limitations. Relating to effluent discharge it provides that beginning July 1, 1978 the concentration limitations as to biochemical oxygen demand shall not exceed 70 milligrams per liter on a thirty-day average and 105 milligrams per liter on a seven-day average. Within the last thirty days the City concedes that there have been five violations for biochemical oxygen demand on a seven-day moving average and seven violations for biochemical oxygen demand on a thirty-day moving average. These violations are attributed to the higher flows experienced at the plant following the winter snow melt. What is equally compelling is that while the City is not fully in compliance presently with these effluent limitations, the judgment provides that beginning December 31, 197 the discharge concentration limitations are considerably more restrictive. To come into compliance both with the Federal Water Pollution Control Act and the judgment, discharge concentration limitations for biochemical oxygen demand are 30 milligrams per liter on a thirty-day average and 45 milligrams per liter on a seven-day average.

Additionally, I find that while there have been noteworthy efforts to comply with the judgment, particularly in the last four months, this could not have been accomplished without the special emergency effort provided by Camp, Dresser & McKee in providing, on a continuing basis, as high as 35 and as low as 20 of its staff on an around-the-clock basis to the wastewater facility.

In fairness to the defendants, this opinion should note their effort to achieve compliance with the judgment. The City and its Sewer Department has designated Camp,

Dresser & McKee as the lead consultant in bringing the plant into compliance with the effluent limitations in the judgment. As a part of this responsibility, Camp, Dresser & McKee will undertake the development of project management control techniques. By June 1, 1979 the defendants expect to have a critical path system operational which will provide detailed information on 300 activities directly related to the judgment. It is estimated that associated with these 300 activities there are 25,000 to 50,000 separate task elements.

The defendants have adopted emergency purchase arrangements which will remain in force until a new ordinance providing special purchase arrangements for the sewer plant is implemented. The defendants have increased their current stock of spare parts and established necessary personnel positions to improve inventory control. They have established a new position, that of head trainer, who reports directly to the Chief Civil Plant Engineer. New procedures revising shift schedules have been brought about so that regular on-the-job training can be incorporated into each employee's work time. A Civil Engineer has been appointed to direct the operational aspects of the interim sludge program. An oxygen aeration deck number 2 is being re-designed with major modifications to correct the initial design deficiencies so that it will provide dependable oxygen aeration for 300 MGD.

Additional efforts which require comment are these: a reorganization in which the Chief Plant Engineer reports directly to the Director of the Water and Sewerage Department; the establishment of a waste-water facilities project team to focus upon the administration of design and construction work; a new management control system to keep the Mayor fully informed; staffing changes consisting of nationwide recruitment; the requirement of written examinations and the Chief Plant Engineer to have input into employee selection. Authorized staff has been increased by 45 persons for the fiscal year, and in the area of training, 11 courses have been completed through January 7, 1979. Additional contracts to improve performance of the vacuum filters have been let, and generally there have been noteworthy improvements in the area of operation and maintenance within the plant.

Notwithstanding these improvements, potential areas of non-compliance in the future loom. Serious difficulties may be encountered in providing for permanent sludge disposal. The problem of phosphorous removal continues. Significant questions have been raised as to a final facilities plan. Additionally, the defendants have now said that they do not believe that they will be able to comply with the secondary treatment mandate and the related restrictions on effluents beginning in January, 1980, unless substantial additional de-watering equipment is obtained beyond the 3,000 square feet included in the segmented facilities plan. They are joined in this view by Camp, Dresser & McKee. The monitor has suggested that the existing facilities properly maintained and operated may be capable of doing the job. To obtain this capability a number of construction activities need to be completed. These activities include, but are not limited to, the completion of the 400 T/Day oxygen plant repair and modification of all oxygen aeration decks; modification of influent flow lines to all 21 existing final clarifiers; completion of the existing solids handling system including sludge removal, sludge thickeners, sludge blending, and sludge de-watering; conveyor systems and incinerators need to be operated in an optimum manner in accordance with the objectives specified in the segmented facilities plan.

To ascertain the capabilities of the existing plant, a full scale plant test should be scheduled for the summer of 1979. This test should be designed to establish actual performance data on existing plant facilities including, but not limited to, the primary treatment system, the secondary treatment system and the solids treatment system. The test should determine whether or not the plant can achieve and maintain the 30-30 effluent limitations. As a result of this test the parties and the court will be

able to arrive at a schedule of changes, if any, which may be necessary to bring the plant into compliance. The outline of the full scale plant test, which representatives of the parties have prepared at my request is attached hereto.

I now turn to the conclusions I reach on the evidence presented to me.

Defendants City and its Sewerage Department have failed to comply with the judgment of this court and federal law governing water pollution. Their breaches, which have been detailed in substantial part, require the grant of relief sought by EPA over the operations of the sewerage department. A court appointed administrator over operations will be selected, not in any punitive sense, but to secure compliance with the law and this court's judgment. Hopefully, the term of the administrator and this court's involvement in the operations of the department will be of limited duration. And, as I have already indicated, I will also order a full-scale plant test to determine the real capability of the department, this test to occur later this year so that some of the nagging questions as to the adequacy of the plant can be determined.

The exercise of such authority is founded in the broad range of equitable powers available to this court to enforce and effectuate its orders and judgments. See *Terry v. Adams*, 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953); *Mississippi Valley Barge Line Co. v. United States*, 273 F.Supp. 1, 6 (E.D.Mo.1967), *aff'd sub nom. Osbourne v. Mississippi Valley Barge Line Co.*, 389 U.S. 579, 88 S.Ct. 692, 19 L.Ed.2d 779 (1968); *United States v. Wallace*, 218 F.Supp. 290, 292 (N.D.Ala.1963). The findings which I have set out above demonstrate the gravity of a situation which demands a more effective remedy than can be fashioned from the ordinary tools of equity. Where "[t]he more usual remedies—contempt proceedings and further injunctions —[are] plainly not very promising as they [invite] further confrontation and delay; and when the usual remedies are inadequate, a court of equity is justified, particu-

larly in aid of an outstanding injunction, in turning to less common ones, such as a receivership, to get the job done." *Morgan v. McDonough*, 540 F.2d 527, 533 (1st Cir. 1976).

Similar conclusions have been reached by other courts. For example, the Governor of Alabama has recently been appointed temporary receiver of the state prison system in order to alleviate prison conditions found to be in violation of the Eighth Amendment. *Newman v. Alabama*, 466 F.Supp. 628 (N.D. Ala.1979), *enforcing Pugh v. Locke*, 406 F.Supp. 318 (N.D.Ala.1976) and *Newman v. Alabama*, 349 F.Supp. 278 (N.D.Ala.1972). A temporary receiver was also named in Boston in order to achieve the peaceful desegregation of South Boston High School, *Morgan v. McDonough, supra*, in light of the reluctance of school officials to comply with the court's orders in that regard. See also *Puget Sound Gillnetters' Association v. United States District Court*, 573 F.2d 1123, 1129 (9th Cir. 1978).

In order to achieve full compliance with the judgment of this court, I appoint Coleman A. Young, Mayor of Detroit, as the Administrator over operations of the Detroit waste-water system. I empower and instruct him to obtain immediately the full-time services of an executive assistant, responsible only to him, to carry out this mandate.

Basic also to the need for this appointment are the requirements of the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.*, the Federal Air Pollution Control Act, 42 U.S.C. §§ 1857 *et seq.*, and pertinent Michigan statutes.

Whenever a federal court is involved in the affairs of local government and a remedy is sought which may interfere with traditional notions of separation of powers, great care must be taken to reach a balance that does not summarily deny to such local government the full exercise of its authority over its affairs. I do keep in mind that Detroit owns and operates its wastewater plant under age-old property law and that its chief executive is elected

by its people to supervise and carry out the functions of wastewater disposal.

The present situation *does not* require that the city and its Mayor be separated from this vital function. The present situation *does* require that to the powers that the Mayor presently possesses as Detroit's chief executive there be added such powers as may be entrusted to him by this court. There is thus conjoined in one person, Mayor Coleman A. Young, both the traditional powers of his office and the extraordinary powers inherent in this appointment to bring about compliance. These powers will enable him to act decisively and swiftly to bring about needed results; in their exercise, where needed, he is not responsible to the Water Board, the Civil Service Commission, the Common Council, suburban governments, or the State of Michigan, but only to this court.

But transcending these considerations there is this reality: Mayor Young has said: "The buck stops here and with me." He clearly sees it as a task which he and the city *must* complete. He makes this request at a time when he and the community are making a herculean effort to revitalize the city—not only the restoration of its downtown area but also its position as the provider of vast governmental, cultural, and other services to the people of southeastern Michigan.

In short, the Mayor has said: "I know the problems—I will do the job." In many ways in the past few years, he has demonstrated his remarkable competence in turning this city around. I am firmly of the opinion that he can do likewise here.

To that end I appoint him as Administrator over operations of the Detroit wastewater system and there is thus accordingly granted to him such powers as are traditionally exercised by receivers to manage and conduct such operations under the supervision of the court. This appointment is made for a period of not less than one year, unless the Administrator requests to be relieved or the court orders a termination.

I request that counsel for the parties immediately submit an order to me which contains the directives set forth in this opinion and spells out the powers of the Administrator over the operations of the wastewater system.