Lynn HELLEBUST, John R. Craft, Kansas Natural Resource Council, and Common Cause of Kansas, Plaintiffs,

v.

Sam BROWNBACK, in his official capacity as Secretary of the Kansas State Board of Agriculture, and Jay Armstrong, Victor Krainbill, Alvin Epler, Altis Ferree, Thayne Larson, Ralph H. Rindt, F.E. Bliss, Lois Schlickau, Floyd O. Coen, Bob L. Moore, Anne Marie Worley, and Art Howell in their official capacities as members of the Kansas Board of Agriculture, Defendants.

Civ. A. No. 92–2374–JWL.

United States District Court,
D. Kansas.

June 30, 1993.

Donn J. Everett, Everett, Seaton, Miller & Bell, Manhattan, KS, William J. Craven, Lecompton, KS, for plaintiffs.

David D. Plinsky, Office of the Atty. Gen., Topeka, KS, for defendants.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

### I. *Introduction*

This court has found that the method by which the Kansas State Board of Agriculture ("KSBA") and the Secretary of the KSBA are selected violates the equal protection clause of the Fourteenth Amendment of the United States Constitution because the KSBA "exercises general governmental powers which affect the lives of all Kansans but its membership is selected by a narrowly limited voting process." *Hellebust v. Brownback,* 824 F.Supp. 1511 (D.Kan.1993). The matter of an appropriate remedy was the subject of a hearing held on June 30, 1993, following the submission of briefs by both sides and the passage of sufficient time for the Kansas Legislature to have addressed this matter had it so chosen.

The method of selection of the KSBA and the Secretary which was found to be unconstitutional is codified in K.S.A. §§ 74–502, 503 (1992). The defendants in this case, the members of the board and the Secretary of

the KSBA, do not have the power to change those statutes. The members of the Kansas Legislature are not parties to this action and so those persons who could change the method by which the KSBA board members and Secretary are selected, by changing the statutes, are not before this court. Therefore, the remedy adopted by the court is, at least in part, provisional in nature because this court cannot, with the parties before it, order legislative changes which would provide full relief. The remedies ordered by the court will remain effective until the state of Kansas enacts legislation which passes constitutional scrutiny.[1]

## II. Remedies

■ A remedy selected by the court must address the plaintiffs' injury. See *Milliken v. Bradley*, 418 U.S. 717, 744, 94 S.Ct. 3112, 3127, 41 L.Ed.2d 1069 (1974) ("The scope of the remedy is determined by the nature and extent of the constitutional violation.") The plaintiffs' injury is twofold: (1) the Secretary and the Board administer an unconstitutional election when selecting a new Secretary and board members, and (2) the KSBA governs the plaintiffs by exercising general governmental powers even though the Secretary and the members of the board of the KSBA are unconstitutionally elected.

■ On January 13, 1993, this court issued a preliminary injunction which enjoined the KSBA from holding elections until a final order was issued in this case. *Hellebust v. Brownback*, 812 F.Supp. 1136 (D.Kan.1993). The preliminary injunction addresses the first element of the plaintiffs' injury, the administration of an unconstitutional election. That injunction was continued in this court's order of May 7, 1993. *Hellebust v. Brownback*, 824 F.Supp. 1511 (D.Kan.1993). That injunction is now made permanent in order to restrain the KSBA from conducting un-

constitutional elections until such time as the state of Kansas enacts legislation concerning the KSBA which passes constitutional scrutiny. The remainder of this order will consider remedies which address the plaintiffs' second injury, being governed and regulated by an unconstitutionally selected body.

■ The court has considered and rejected a number of remedies which are within its equitable powers and which might address the plaintiffs' injury. "Once a [constitutional] right and a violation have been shown, the scope of a District Court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent equitable remedies." *Swann v. Charlotte–Mecklenburg Board of Education*, 402 U.S. 1, 15, 91 S.Ct. 1267, 1276, 28 L.Ed.2d 554 (1971). In choosing a remedy, this court is guided by the admonition of the Supreme Court that "a district court should not pre-empt the legislative task nor intrude upon state policy any more than necessary." *White v. Weiser*, 412 U.S. 783, 795, 93 S.Ct. 2348, 2355, 37 L.Ed.2d 335 (1973). Therefore, the court has considered and rejected as too intrusive into state policy the possible remedies of blocking appropriations to the KSBA, stripping away general governmental authority from the defendants, convening a special session of the Kansas Legislature, or blocking any further legislative action until a remedial legislative plan is enacted which makes the administration of the KSBA constitutional. This court deeply respects traditional notions of federalism and fervently believes that judicial restraint calls for the tailoring of remedies of the most limited scope necessary to discharge its constitutional function. It acts here not because it relishes exercising the power but because it would be an abdication of its solemn responsibility if it were not to do so.

1. Without considering all the ramifications, including the Kansas constitutional arguments raised by the plaintiffs, and thus without deciding their propriety in advance, the court notes that such legislation theoretically could include any of a number of potential solutions. The members of the board or the Secretary of the KSBA could be directly elected by the registered voters of Kansas. The members of the board or the Secretary could be appointed by the Governor of Kansas. The legislature might choose to remove the general governmental powers which make the KSBA subject to the one person, one vote rule and as such, the officials of the KSBA could possibly be selected by the method currently utilized. Other solutions might also exist which are not suggested here.

Bearing these considerations in mind, the remedy which the court has decided upon is twofold: (1) declare the terms of the members of the board and the Secretary to have expired, and (2) appoint the Governor of the state of Kansas, in his or her official capacity [2] as receiver for the Kansas State Board of Agriculture to serve until such time as the state devises a constitutional method for selection.[3] This remedy specifically addresses the harm of general governmental powers being exercised by unconstitutionally selected officials without presuming to impose a permanent alternative procedure.

## A. Terms of Defendants Expired

Because the court enjoined the election of new board members which was scheduled to take place on January 13, 1993, that election never occurred. Members of the board of the KSBA are elected to staggered three year terms. K.S.A. § 74–503 (1992). The terms of some of the members of the Board would have expired on January 13, 1993, unless reelected, except that the statute provides that a board member shall remain in that position "until their successors are elected and qualified." *Id.* The Secretary of the KSBA is elected for a two year term. *Id.* It is not known whether the current Secretary and which board members were up for reelection on January 13, 1993. The court can deal with both those defendants whose terms would have normally expired and those who continue to serve their regular term because "the scope of a District Court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Swann v. Charlotte–Mecklenburg Bd. of Education,* 402 U.S. 1, 15, 91 S.Ct. 1267, 1276, 28 L.Ed.2d 554 (1971). The court orders that the terms of those defendants whose positions were up for election on or about January 13, 1993 are expired. The offices of those defendants whose positions were not up for election on or about January 13, 1993 are declared vacant.

Although the court has not observed a case with a remedy exactly like this one ordered here, there is substantial precedent for federal courts setting aside state elections which violate constitutional requirements such as equal protection. Two of the most notable examples are *Hamer v. Campbell,* 358 F.2d 215, 221–22 (5th Cir.1966) and *Bell v. Southwell,* 376 F.2d 659, 664 (5th Cir.1967) in which the Fifth Circuit set aside two local elections in the 1960's because the plaintiffs showed that the elections were tainted by racial discrimination. Neither of those cases was reversed by the Supreme Court. In *Hamer,* like the present case, the plaintiffs complained that they had been deprived of the opportunity to vote for the local government rather than merely having their votes unconstitutionally diluted, the situation in most reapportionment cases.

The present remedy is not as drastic as the remedy which was utilized in *Hamer* and *Bell.* In both *Hamer* and *Bell,* the courts set aside elections in which the entire electorate had the opportunity to vote. The defendants in this action were elected by a limited electorate drawn from a few special organizations and groups. This remedy satisfies constitutional requirements.

## B. Appointment of Receiver

The second element of the relief ordered by the court is that the Governor of the state of Kansas, in his or her official capacity, be appointed as receiver for the KSBA. This court has the inherent equitable powers to appoint such a receiver.

> Courts have (at least in the absence of legislation to the contrary) inherent power to provide themselves with appropriate instruments required for the performance of their duties.... This power includes authority to appoint persons unconnected with the court to aid judges in the performance of specific judicial duties, as they may arise in the progress of a cause. From the commencement of our Government, it has been exercised by the federal

2. By this reference the court means that whoever may occupy the office of Governor of Kansas at any given time shall serve in this capacity so that the receivership can remain filled indefinitely until further order of the court.

3. As addressed below, the court defers implementation of this remedial order until October 1, 1993.

courts, when sitting in equity, by appointing, either with or without the consent of the parties, special masters, auditors, examiners, and commissioners.

*Ex Parte Peterson,* 253 U.S. 300, 40 S.Ct. 543, 64 L.Ed. 919 (1920).

■ The appointment of a special master is also addressed by Rule 53 of the Federal Rules of Civil Procedure. Although this court appoints a receiver under its inherent equitable powers, it is guided by the provisions of Rule 53, which state that an order appointing a special master "shall be made only upon a showing that some exceptional condition requires it." Fed.R.Civ.P. 53(b). This court does not believe that judges should undertake to manage the day to day administration of a state agency and this court does not intend to do so. However, in light of the court's vacation of the defendants' offices, someone must have ultimate responsibility for operation of the Board and carrying out the functions delegated to it by the legislature. As one district court succinctly stated, "Rule 53's requirement that the case referred to a master be 'exceptional' is more than satisfied when a court is faced with a polycentric problem that cannot easily be resolved through a traditional courtroom-bound adjudicative process." *Hart v. Community School Board of Brooklyn,* 383 F.Supp. 699, 766 (E.D.N.Y.1974), *aff'd,* 512 F.2d 37 (2d Cir.1975) (emphasis added). The daily administration of the KSBA is such a polycentric problem and the appointment of a receiver here is appropriate to help solve it.

The Governor, in his or her official capacity, is a logical choice for receiver of the KSBA. The appointment of the Governor as a receiver further addresses the plaintiffs' injury of being governed by unconstitutionally elected officials by permitting those officials' services to terminate without causing the agency to shut down or be rudderless in the process. This remedy closely approximates a constitutional manner in which the Secretary and the board of the KSBA could be selected, i.e., they could be appointed by the Governor of the state of Kansas who is himself or herself directly elected by the voters of Kansas in accordance with the "one person, one vote" requirements of the equal protection clause.

A state's governor, by dint of his or her office, is uniquely qualified to oversee a state agency with general governmental powers, much of which are executive in nature, such as enforcement of regulations relating to the healthfulness of meat and milk. In a practical sense, such designation is appealing because there is no need for specialized compensation as there would be for a master drawn from the ranks of private citizens. This will simply be another duty of the Governor, who already is "hired" by the people of the state of Kansas, with actual operating authority carried out by the Board's professional staff and employees.

Appointing executive officials of state and local governments has precedent in the case law which points to this court's equitable powers to do so. In *Newman v. State of Alabama,* 466 F.Supp. 628 (M.D.Ala.1979), the state of Alabama, though ordered to do so in 1972, failed to comply with a court order to conform its prisons with minimum Constitutional standards. Therefore, the court, obviously frustrated with the state's lack of compliance, appointed the Governor of Alabama as the receiver for the Alabama Prison System in order to bring the prisons up to constitutional standards.

In *U.S. v. City of Detroit,* 476 F.Supp. 512 (D.Mich.1979), the district court appointed the Mayor of Detroit as an "administrator" of the city's water treatment plant in order to comply with a consent order entered into by the city and the EPA. The chief executive of the Detroit wastewater plants was elected by the public and the city continually failed to meet federal water pollution control requirements and was in eminent danger of losing large amounts of federal aid. The city and others, including the EPA, had entered a consent decree which required the wastewater plant to meet certain specific requirements, but the city failed to do so. The court appointed the mayor of Detroit, with his consent, to administer the wastewater plant for one year. The mayor, as administrator, was given a number of listed powers and responsibilities related to the operation of the wastewater plant.

That court found the authority to make the above order in the inherent equitable powers of the court. The court stated:

The exercise of such authority is found in the broad range of equitable powers available to this court to enforce and effectuate its orders and judgments. The findings which I have set out above demonstrate the gravity of a situation which demands a more effective remedy than can be fashioned from the ordinary tools of equity. Where the more usual remedies—contempt proceedings and further injunctions—are plainly not very promising as they invite further confrontation and delay; and when the usual remedies are inadequate, a court of equity is justified, particularly in aid of an outstanding injunction, in turning to less common ones, such as a receivership.

*Id.* at 520. (citations omitted). The court went on to say:

Whenever a federal court is involved in the affairs of local government and a remedy is sought which may interfere with traditional notions of separation of powers, great care must be taken to reach a balance that does not summarily deny to such local government the full exercise of its authority over its affairs.

*Id.* at 520. This court also seeks to give the state of Kansas "full exercise of its authority over its affairs" by appointing the Governor, in his or her official capacity, as a receiver for the KSBA.

Appointment of the Governor, in his or her official capacity, is, of course, a provisional remedy, although for an indefinite period of time, and will stay in place until such time as the state of Kansas enacts legislation concerning the KSBA which passes constitutional scrutiny. The court has contacted the present Governor and she has indicated the likelihood of her consent if the court were to adopt this remedy. In the event the Governor were to decline, however, the court would then seek an alternative which would next best fulfill those criteria which it has outlined above.

The question may arise as to the scope of the authority conferred on the receiver. In answer to that question, the court turns to the plaintiffs' statement on page four of their recent reply brief that,

Plaintiffs envision that a special master would serve largely as a caretaker, administering the authority vested by the legislature in both the Board and the Secretary, until the legislature passes a constitutional form of governance. Whatever the Secretary and the Board are required to do, the special master will do. The work of the agency will continue. (emphasis added).

The court agrees with this view of the function of the receiver for the KSBA as a caretaker, at least until it is ultimately determined that no other permanent solution will be forthcoming (either on appeal or by legislative action). The appointment of the Governor, in his or her official capacity, is intended only to remedy the plaintiffs' injury of being unconstitutionally governed. This case is unlike those in which the receiver was intended to accomplish some policy-oriented result, such as cleaning up state prisons in *Newman v. State of Alabama* and making water treatment centers run properly in *United States v. City of Detroit.* To the contrary, absolutely no claim of malfeasance has been made by the plaintiffs nor any suggestion by them that the policies of the Board must be changed in order to rectify any constitutional deficiency. The court, then, has neither been presented with any evidence that would form the basis for determining that policy or personnel changes are in order nor does it make any such findings here. The receiver, then, should not make far-ranging policy or personnel changes in the KSBA until such time as a legislative solution is worked out or this case is determined on appeal.

### III. Stay Pending Appeal

■ The defendants have moved the court for a stay of further proceedings (Doc. # 73) pending resolution of the defendants' appeal of this court's order of May 7, 1993. That motion had two alternative requests: (1) that the court stay any further proceedings including the hearing concerning remedies held June 30, 1993 and (2) that the court stay any order it issues concerning remedies until the appeal is decided. For the reasons set forth

below, the defendants motion to stay pending appeal is denied.[4]

Fed.R.Civ.P. 62(d) grants the district court the authority to stay its orders pending appeal. The standard for a motion to stay pending appeal is

> As a basis for a stay, the movant was required to show the district court: (1) its strong position on the merits of the appeal; (2) irreparable injury if the stay was denied; (3) that a stay would not substantially harm other parties to the litigation; and (4) that the public interests favor a stay.

*Securities Investor Protection v. Blinder, Robinson & Co.,* 962 F.2d 960, 968 (10th Cir.1992); *Hilton v. Braunskill,* 481 U.S. 770, 776, 107 S.Ct. 2113, 2119, 95 L.Ed.2d 724 (1987). Although this decision is a somewhat close one and other courts faced with the same situation could decide differently, this court finds that the defendants have not met the burden of showing the requirements for a stay as set out above.

### A. Likelihood of Success on the Merits

The defendants have not made a strong showing that they are likely to succeed on the merits of their appeal. The defendants argue that this case presents legal matters of first impression because courts have not addressed whether an administrative agency with state-wide jurisdiction may qualify for the limited franchise selection process addressed in Supreme Court cases such as *Salyer Land Co. v. Tulare Lake Basin Water Storage District,* 410 U.S. 719, 93 S.Ct. 1224, 35 L.Ed.2d 659 (1973) and *Ball v. James,* 451 U.S. 355, 101 S.Ct. 1811, 68 L.Ed.2d 150 (1981). As the court stated in its previous opinion, "there is no case to which the court was cited or which its own research has uncovered that shares the particular salient characteristics of this one." *Hellebust v. Brownback,* 824 F.Supp. 1511 (D.Kan.1993). However, that does not mean that this court sees its decision, as the law presently stands, as anything but the necessary conclusion to be reached under all the circumstances here.

Courts sometimes will find that an appeal has a strong likelihood of success "where the legal questions were substantial and matters of first impression." *Sweeney v. Bond,* 519 F.Supp. 124, 132 (E.D.Mo.1981), *aff'd,* 669 F.2d 542 (8th Cir.), *cert. denied sub nom., Schenberg v. Bond,* 459 U.S. 878, 103 S.Ct. 174, 74 L.Ed.2d 143 (1982). Theoretically, a higher court could develop an exception or could broaden the application of the settled precedent in *Salyer* and *Ball* to result in an agency like the KSBA being allowed a limited franchise exception to the "one person, one vote" requirement of the Fourteenth Amendment. If such a court chooses to do so, so be it. However, this court does not think that the KSBA, which exercises general governmental powers, falls within the narrow exception for governmental entities which have a special limited purpose and the activities of which have a disproportionate effect on those who may vote for its officials under presently settled equal protection jurisprudence. *Avery v. Midland County,* 390 U.S. 474, 483–84, 88 S.Ct. 1114, 1120, 20 L.Ed.2d 45 (1968). Although predicting the future is hazardous, neither does the court see any real indication that this is the case on which higher courts may seize to change the thrust of the voting rights decisions.

Therefore, although the defendants raise a colorable argument in that sense, the court finds that they have not made a strong showing of likelihood of success on the merits of the appeal.

### B. Irreparable Injury to the Defendants

The court does believe that the defendants have shown that they will be irreparably injured by the lack of a stay in this case. The Sixth Circuit has addressed what is meant by irreparable injury in this instructive way:

> In evaluating the degree of injury, it is important to remember that [t]he key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate

---

4. The court previously held that it would not stay the June 30 hearing in light of its proximity and lack of prejudice to the defendants in proceeding as scheduled.

compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm. In addition, the harm alleged must be both certain and immediate, rather than speculative or theoretical. In order to substantiate a claim that irreparable injury is likely to occur, a movant must provide some evidence that the harm has occurred in the past and is likely to occur again.

*Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog,* 945 F.2d 150, 154 (6th Cir.1991) (citations omitted).

Although the court appreciates the defendants' concern that not staying the remedies ordered by the court will cause unnecessary disruption to the administration of the KSBA and the lives of those who work in that agency, that argument is not compelling here. On the contrary, divesting the defendants of their offices is, in fact, irreparable. They cannot be compensated for their loss of office in the event of a different outcome on appeal. That bell cannot be "un-rung" any more than could the court's having permitted the unconstitutional January election to have gone forward (to accommodate the assembled delegates) have been remedied.[5] This is tempered to some degree because it is a fact of life in public office that changes in administrations and agency heads do occur with some regularity. That is a risk that public officials always assume. The irreparable injury to the defendants which results from not staying this order concerning remedies is outweighed by the other factors of this analysis, especially the likelihood of success on the merits and substantial injury to the plaintiffs.

### C. Substantial Injury to the Plaintiffs

The plaintiffs' injury, being governed and regulated by an unconstitutionally elected body, will continue if this stay is granted. The members of the Board who were unconstitutionally elected in the first place will continue to govern the plaintiffs by executing general governmental functions. The court cannot overstate the importance it attaches to this injury. Being governed unconstitutionally runs counter to the fundamental precepts upon which this nation was founded. "Tea parties" and rebellion have had their roots in such an injury. The defendants have failed in their attempt to show that the plaintiffs will not suffer substantial injury as a result of the stay.

### D. Public Interest

The public interest, though certainly a closer call, on balance leads to denying the motion for a stay. In balancing the public interest, the court considers a number of factors. First of all, the public of the state of Kansas will continue to be governed and regulated by an unconstitutionally elected body unless the court's remedies go into effect. In contrast, not staying these remedies will cause a certain amount of disruption to the KSBA and therefore to the public which relies upon it. In the balance, the court must consider the injury to the public resulting from an ongoing constitutional violation to outweigh the administrative problems which will result from the unfortunate disruption these remedies will bring.[6] Therefore, the defendants have not shown that the stay is in the public interest.

### E. Awaiting Legislative Action

The defendants also argue that the court should stay these proceedings awaiting action by the Kansas Legislature to rectify the unconstitutional nature of the KSBA. This court would have welcomed such action with open arms, having granted the preliminary injunction enjoining elections of board members on January 13, 1993, while there were still several months remaining in the regular session of the legislature. No bill addressing these issues even emerged from committee

---

5. The court has certainly never wanted to cause any unnecessary disruption to the lives of the defendants who the plaintiffs apparently concede are doing an exemplary job and seem to be caught in the middle of a precarious and, probably, unforeseen, situation.

6. It should be noted that the defendants have proffered no actual evidence of what disruption to the public will occur or what its effect may be. Although a certain amount of disruption may be presumed, that is not enough to overcome the serious injury of permitting unconstitutional governance to continue.

to be voted on by either house or senate. Moreover, on May 7, 1993, this court, in making its ultimate finding of unconstitutionality, only continued the preliminary injunction and set the hearing for remedies almost two months later. Again, no action was taken to effect a legislative solution. In each of these orders, the court specifically invited the legislature to act. Now, it is reported that something is scheduled in a Senate Committee at the end of August. However, the legislature has thus far demonstrated its lack of interest in addressing the unconstitutional selection process of the KSBA, as is its perfect right to do pending a final appellate mandate, and this court must then proceed to order a remedy to provisionally rectify the situation.

### F. A Short Stay for Administrative Purposes

The court does stay the effective date of all aspects of this remedy order, other than rendering the injunction permanent, until October 1, 1993 in order to effect a smooth transition in administration. Such a delay will also allow the Governor to plan how to fulfill her responsibility as receiver for the KSBA, will give the legislature yet another opportunity to make the KSBA a constitutionally elected governmental entity and will permit the defendants to again seek a stay pending appeal from the Circuit Court should they desire to do so.[7]

### IV. Conclusion

IT IS THEREFORE ORDERED BY THE COURT that the terms of those defendants whose positions as Secretary or members of the board of the Kansas State Board of Agriculture were up for election on or about January 13, 1993 are declared to have expired and the positions of all other defendants as Secretary or members of the board of the Kansas State Board of Agriculture are declared to be vacant.

IT IS FURTHER ORDERED BY THE COURT that it shall retain jurisdiction hereof during the pendency of the provisional

remedies ordered hereby for the purpose of effectuating them.

IT IS FURTHER ORDERED BY THE COURT that the Governor of the state of Kansas, in his or her official capacity, is appointed as receiver for the Kansas State Board of Agriculture.

IT IS FURTHER ORDERED BY THE COURT that the Governor of the state of Kansas shall make a written report every three months to this court detailing personnel hired and fired and any policy changes made within the Kansas State Board of Agriculture.

IT IS FURTHER ORDERED BY THE COURT that the preliminary injunction entered on January 13, 1993 is now permanent.

IT IS FURTHER ORDERED BY THE COURT that the defendants' motion for a stay pending appeal (Doc. # 73) is denied.

IT IS FURTHER ORDERED BY THE COURT that this order shall be stayed until October 1, 1993, except for making the preliminary injunction permanent, which shall be effective immediately.

IT IS SO ORDERED.

---

7. This stay shall also allow the members of the KSBA to function in their capacity as members of the Kansas State Fair Board throughout the 1993 state fair, a legitimate concern pressed on the court with some urgency at the hearing.